UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER PATILLO, #528959,

        Petitioner,

                                  CASE NO. 08-CV-11774
v.                                     HONORABLE LAWRENCE P. ZATKOFF

SUSAN DAVIS,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
AND DENYING A CERTIFICATE OF APPEALABILITY AND
LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

Michigan prisoner Christopher Patillo ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of three counts of first-degree criminal sexual conduct, Mich. Comp. L. § 750.520b(1), one count of first-degree home invasion, Mich. Comp. L. § 750.110a(2), and one count of assault, Mich. Comp. L. § 750.81(2), following a jury trial in the Oakland County Circuit Court and was sentenced to concurrent terms of 12 to 40 years imprisonment, 10 to 20 years imprisonment, and 93 days in jail. In his pleadings, Petitioner raises claims concerning prosecutorial misconduct and a reference to his right to remain silent. For the reasons stated, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from his sexual and physical assault upon his soon-to-be divorced wife at her apartment in Farmington Hills, Michigan on May 28, 2002.  The victim, Alisha Ann McManus Patillo, testified that she and Petitioner had been married for six years and had three children, but were in the process of divorce at the time of the incident.  She had filed for divorce in August, 2001 and obtained a personal protection order against Petitioner in October, 2001.

At 11:30 a.m. on May 28, 2002, while Ms. Patillo was talking to her father on the telephone, she heard a knock on the door.  Believing it was the maintenance man, she opened the door. Petitioner grabbed her by the neck, pushed his way into the apartment, and tried to kiss her.  He asked her who was on the phone and listened on an extension.  He told her that she was still his wife and belonged to him.  He then removed her pants and underwear, told her to open her legs, and licked her vagina.  She struck Petitioner with her free hand.  She did not tell her father what was happening, and ended their conversation.  Petitioner then digitally penetrated her and she told him to stop.  He ripped her sweater, sucked on her breast, and tried to force her to suck his penis.  She crawled away from him at one point, but he caught up to her, rubbed his penis, and ejaculated on her face and sweater.  Petitioner also told her that he wished they never had children, grabbed her neck and choked her, and slammed her head against the wall and the floor.  When Petitioner left the apartment, she called 911, spoke to the police, and received medical treatment.

Ms. Patillo also described her sexual relationship with Petitioner.  She said that it was not normal for him to give her hickeys, fondle her breasts, digitally penetrate her, or perform oral sex upon her and that such activities had not occurred for many years.  She last performed oral sex upon Petitioner and had vaginal sex with him in June, 2001.  She said that Petitioner preferred anal sex

and that she last had such sexual contact with him in October, 2001. She denied cheating on Petitioner and said that she did not have sex with someone else until 2002.

Police officers testified about their investigation of the crime. Responding officers indicated that Ms. Patillo was shaken, crying, and upset when they arrived at the scene. The officer-in-charge of the case testified that he responded to the scene and took a five-page statement from the victim. He also indicated that he "would have taken a statement from him [meaning Petitioner]." Defense counsel objected and the trial court sustained the objection. No further comment was made by the officer or the prosecutor regarding Petitioner's silence.

Medical personnel also testified at trial. A paramedic testified that Ms. Patillo seemed agitated and fearful, that her vital signs were elevated, and that she appeared to have difficulty swallowing. A nurse who examined Ms. Patillo at the hospital testified that she found a number of bruises on Ms. Patillo's body, as well as vaginal abrasions, bruising, and redness. She also observed tongue bruises and petechia under the tongue, which was consistent with strangulation.

Petitioner testified in his own defense at trial. He said that he went to Ms. Patillo's apartment to give her money. He knocked on her door, and she let him into the apartment. He recalled that she was on the telephone with her father at the time. They sat on the couch and kissed. He then removed her pants and performed oral sex upon her. She reciprocated. They sat on the couch and discussed financial issues. When he went to the bathroom, he saw a photograph of his best friend's penis in Ms. Patillo's bedroom and became angry. He grabbed Ms. Patillo, and pushed her, but did not slam her head into anything. Petitioner claimed that the sexual acts were consensual and denied committing any other sexual or assaultive acts.

At the close of trial, the jury convicted Petitioner of three counts of first-degree criminal

sexual conduct, one count of first-degree home invasion, and one count of assault. The trial court

subsequently sentenced him to concurrent terms of 12 to 40 years imprisonment on the criminal

sexual conduct convictions, a concurrent term of 10 to 20 years imprisonment on the home invasion

conviction, and 93 days in jail on the assault conviction.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals

raising the same claims presented on habeas review. The Michigan Court of Appeals denied relief

and affirmed Petitioner's convictions. *See People v. Patillo*, No. 262699, 2006 WL 3421769 (Mich.

Ct. App. Nov. 29, 2006) (unpublished). Petitioner also filed an application for leave to appeal with

the Michigan Supreme Court, which was denied. *See People v. Patillo*, 478 Mich. 869, 731 N.W.2d

719 (2007).

Petitioner thereafter filed his federal habeas petition raising the following claims:

> He was denied his Sixth and Fourteenth Amendment right to a fair trial and due
> process of law through improper argument of the prosecutor and by the officer in
> charge, where the argument and comments appealed to the jury's sense of civic duty,
> sympathy for the victim, expressed the prosecutor's personal opinion, and vouched
> for the credibility of the complaining witness, and referenced his exercise of his
> constitutional right to remain silent.

Respondent has filed an answer to the petition asserting that it should be denied because the claims

lack merit and/or are barred by procedural default.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28

U.S.C. § 2241 *et seq*., governs this case because Petitioner filed his petition after the AEDPA's

effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of

[Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Analysis

### A.    Prosecutorial Misconduct Claims

Petitioner first asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by appealing to the jury's sense of civic duty, creating sympathy for the victim, expressing a personal belief in guilt, and vouching for the victim's credibility. The disputed statements include references to the victim's "horrible experience" and "horrible sex life" and the prosecutor's rebuttal comments that the case was not about "winning or losing," but about justice. Respondent contends that these claims are barred by procedural default because Petitioner failed to object to the disputed remarks at trial. Respondent also contends that the claims lack merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply

with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural

rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also*

*Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539

(6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct

or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly'

states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64

(1989). The last *explained* state court judgment should be used to make this determination. *Ylst*

*v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained

denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief

on these claims, the court relied upon a state procedural bar—Petitioner's failure to object at trial.

*See Patillo*, 2006 WL 3421769 at *1. The failure to make a contemporaneous objection is a

recognized and firmly-established adequate and independent state law ground for refusing to review

trial errors. *See People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999); *People v.*

*Stanaway*, 446 Mich. 643, 687; 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S.

722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond

the default to determine if there are circumstances warranting review on the merits. *See Paprocki*

*v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state

procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v.*

*Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a

procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d

264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied relief on these claims

based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse his procedural default.[1] A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Nonetheless, the Court finds that Petitioner cannot establish prejudice. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four

---

[1]In his brief, Petitioner notes that trial counsel did not object to the prosecutor's argument, but does not assert that counsel was ineffective or raise any such issue as a distinct claim.

factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Having reviewed the record, the Court concludes that Petitioner's prosecutorial misconduct claims lack merit for the reasons stated by the Michigan Court of Appeals in reviewing those claims for plain error. *See Patillo*, 2006 WL 3421769 at *1-2. Simply put, Petitioner has not shown that the prosecutor's comments were improper. The challenged comments were based upon the victim's testimony at trial and the facts and circumstances of the crime. A prosecutor has leeway to argue the evidence and reasonable inferences therefrom. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not improperly express a personal belief in Petitioner's guilt nor vouch for the victim's credibility. The prosecutor also did not urge the jurors to convict Petitioner out of sympathy for the victim or their sense of civic duty. Moreover, to the extent that the prosecutor's comments could be seen as improper, they were not so flagrant as to render Petitioner's trial fundamentally unfair.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably

resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

B.     Police Officer Comment on Silence Claim

Petitioner also asserts that he is entitled to habeas relief because the police officer in charge of the case commented that "he would have taken a statement from him" while testifying about the police investigation. Respondent contends that this claim lacks merit.

The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). *Griffin* thus prevents a prosecutor or trial judge from suggesting to the jury that it may treat a defendant's silence as substantive evidence of guilt. *See Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976). Indirect references to a defendant's failure to testify can violate the Fifth Amendment. *Byrd v. Collins*, 209 F.3d 486, 533 (6th Cir. 2000). A reviewing court must "look at all the surrounding circumstances in determining whether or not there has been a constitutional violation." *Id*. The relevant factors are: (1) whether the remarks were "manifestly intended" to reflect on the accused's silence or were such that the jury would "naturally and necessarily" take them as such; (2) whether the remarks were isolated or extensive; (3) whether the evidence of guilt was otherwise overwhelming; and (4) what curative instructions were given. *Id*. at 533-34.

The Michigan Court of Appeals denied relief on this claim, stating as follows:

Defendant next argues that defendant's right to a fair trial and due process was affected because a police officer commented on defendant's right to remain silent. While the officer was under direct examination by the prosecutor he was asked to describe his duties as lead investigator. The officer replied that he coordinated evidence, took initial reports from witnesses and the victim, and that he "would have taken a statement from [defendant]." At this point defense counsel objected and nothing further was said throughout the remainder of the trial regarding defendant's right to remain silent or the exercise of that right. A curative instruction was neither requested nor provided at the time of the objection.

Police officers have the duty to avoid improper comments during trial. *People v. Holly*, 129 Mich App 405, 415-416; 341 NW2d 823 (1983). It is improper to comment on a defendant's post-*Miranda* right to remain silent. *People v. Dixon*, 217 Mich App 400, 405-406; 552 NW2d 663 (1996). Commenting on a defendant's pre-*Miranda* silence, however, is permissible. *Id*. If a defendant fails to allege sufficient facts on appeal to establish whether the remarks concerned a pre- or post-*Miranda* silence, the defendant forfeits his right to an evidentiary hearing on remand. *Id*. at 406.

It is not clear, even in its most basic context, whether the police officer's comment referred to defendant's silence. Not only is it unclear whether a comment was actually made regarding defendant's silence, even if the reference is construed as a comment on his silence, it is unclear whether the reference involved defendant's pre- or post-*Miranda* silence.

The constitutions of the United States and the State of Michigan contain provisions which guarantee criminal defendants "the right to be free of governmentally compelled self-incrimination." *People v. Collier*, 426 Mich 23, 40; 393 NW2d 346 (1986) (Boyle, J., concurring); US Const, Am V; Const 1963, art 1, § 17. Pursuant to these provisions, it is inappropriate for a prosecutor to elicit testimony regarding a criminal defendant's silence or to comment on his silence. *People v. Bobo*, 390 Mich 355; 212 NW2d 190 (1973). However, because defendant's silence in this case was not demonstrated to be either the result of a police interrogation or to have been maintained in reliance on any *Miranda* warnings, it was not constitutionally protected. *People v. Schollaert*, 194 Mich App 158, 167; 486 NW2d 312 (1992).

Notably, the Michigan Supreme Court has recognized that "it would not comport with due process" to permit a prosecutor to call attention to a defendant's silence following defendant's receipt of his *Miranda* warnings. *People v. Dennis*, 464 Mich 567, 574; 628 NW2d 502 (2001) (citation omitted). In similarity to this case, *Dennis* only comprised a "single question and answer" in which a detective, responding to an open-ended question, revealed that the "defendant had refused to be interviewed

by the detective before speaking with an attorney." *Id.* at 574-575. As here, *Dennis* involved "no further questioning or argument regarding defendant's silence." *Id.* Based on these factual circumstances, the *Dennis* Court opined the defendant was not deprived of his constitutional right to due process by the question and answer exchange. *Id.* at 581.

This is not a situation where the purported reference to defendant's silence served to impeach his exculpatory testimony. The prosecutor did not follow up on the line of questioning or comment further on the officer's statement during trial or closing argument. Hence, in accordance with *Dennis*, it cannot be demonstrated that the one question and partially elicited response affected either the outcome of the proceedings or infringed on defendant's right to due process or a fair trial.

*Patillo*, 2006 WL 3421769 at *3-4 (footnote omitted).

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Applying the aforementioned factors, the Court finds that the police officer's testimony did not violate Petitioner's constitutional rights. First, it does not appear that the police officer intended to comment on Petitioner's right to remain silent, and the prosecutor made no such comment or argument at trial. As to the second factor, the police officer's reference was isolated—only one brief comment during his testimony—and was vague and indirect. *See United States v. Epley*, 52 F.3d 571, 577 (6th Cir. 1995). With respect to the third factor, there was significant evidence of Petitioner's guilt presented at trial, including the victim's testimony and the medical testimony. Lastly, as to the fourth factor, the trial court sustained defense counsel's objection and gave appropriate instructions at the close of trial. The court instructed the jury that the prosecution bore the burden of proof and that Petitioner had no obligation to prove his innocence. Such instructions, although given during general jury instructions and not at the time of the officer's testimony, weigh in favor of finding that the comment was not unconstitutional.

*See Epley*, 52 F.3d at 577; *Spalla v. Foltz*, 788 F.2d 400, 404 (6th Cir. 1986).[2] Accordingly, the Court concludes that the police officer's brief comment during his testimony did not deny Petitioner a fair trial. Habeas relief is not warranted on this claim.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims in his petition and the petition must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of

---

[2]Indeed, the Sixth Circuit has noted that giving a curative instruction at the time of a prosecutor's comment, rather than a general instruction at the conclusion of the case, may do more harm than good by calling the jurors' attention to a brief, innocuous statement, the significance of which may otherwise have gone unnoticed. *See United States v. Drake*, 885 F.2d 323, 324 (6th Cir. 1989).

a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 at 484-85.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists would not find the Court's procedural ruling on his defaulted claims debatable. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: May 24, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 24, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290